## S. L. COLLINS OIL CO. v. CENTRAL TRUST CO. OF ILLINOIS et al.

Circuit Court of Appeals, Eighth Circuit. April 4, 1927.

No. 7521.

**1. Appeal and error ⟢1022(1)—Master's findings, approved by trial court, should not be overthrown, except for obvious error.**

Findings of the master, approved by the trial court, should not be overthrown on review, unless there is obvious error therein.

**2. Receivers ⟢150—Notes forwarded as security for contemplated additional loan held not subsequently pledged as additional collateral to secure previous loan and were recoverable by borrower's receiver.**

In proceeding to establish claim against receivership, wherein receiver demanded return of certain gold notes held by claimant under alleged pledge agreement, evidence *held* not to establish that such notes, which were forwarded to claimant as collateral for additional loan, were subsequently pledged as additional collateral for previous notes, after claimant had decided not to make such additional loan, and hence the notes were recoverable by receiver.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

In the matter of the receivership of the Southern Oil Corporation, wherein the S. L. Collins Oil Company filed a claim, objected to by the Central Trust Company of Illinois, as trustee, and J. W. Woodford, as receiver. From part of an order approving the findings and conclusions of the special master on the claim, the claimant appeals. Affirmed.

Charles A. Steele, of Tulsa, Okl., and J. C. Mabry, of Albia, Iowa (W. A. Daugherty, of Tulsa, Okl., on the brief), for appellant.

George S. Ramsey, of Tulsa, Okl. (Conard E. Cooper, Edgar A. De Meules, and

Villard Martin, all of Tulsa, Okl., on the brief), for appellees.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. The Southern Oil Corporation (an Oklahoma corporation) gave two notes of $25,000 each payable to the order of Lafe S. Collins and dated April 10 and April 11, 1922, respectively. The first note was secured by deposit, as collateral, of certificates representing capital stock in the Kansas & Gulf Company. The second note was secured by the deposit, as collateral, of 25 gold notes of the Kansas & Gulf Company, numbered MB–123 to MB–147, inclusive. These notes were indorsed by Ayers and by George L. Woodward, respectively president and vice president of the Southern. Collins transferred these notes to the S. L. Collins Oil Company by indorsement without recourse.

May 9, 1922, the Southern, by Chas. R. Monfort, its secretary-treasurer, wrote the Collins Company requesting a loan on two additional notes for $10,000 each to be secured by deposit of other gold notes of the Kansas & Gulf. The next day, the Collins Company, by Collins, answered that the loan would be made and to send on the notes and collateral. This was done in a letter from Monfort, dated May 11, 1922. Subsequently, the Collins Company decided not to make the loan. It retained the notes and the gold notes sent as collateral. It now claims nothing on account of these notes (for which the loan was refused), but does claim a right to hold the gold notes (being Nos. MB–43 to MB–67, both inclusive), sent with such, as additional collateral security for the notes of April 10th and April 11th.

The Southern was later placed in receivership. The Collins Company filed therein its claim based on the balance due on the notes of April 10th and 11th. The plaintiff in the receivership proceeding and the receiver filed objections to this claim. One element of these objections was the assertion of a demand for the return of the gold notes (Nos. MB–43 to MB–67, both inclusive).

A special master heard this claim and these objections and his findings and conclusions were approved by the court. This appeal is brought by the Collins Company from so much of that order as decreed the return of these gold notes demanded in the above objections.

There are two issues presented here: (1) Were these notes pledged to secure the notes of April 10th and 11th, by Ayers, president of the Southern; and (2) if so, was that pledge authorized by or effective against the Southern?

As to the fact of a pledge being made of the disputed gold notes as security for the above two notes, the findings of the master were as follows:

"(17) The master further finds that on the 11th day of May, 1922, the Southern Oil Corporation delivered to the said S. L. Collins Oil Company two collateral notes for $10,000 each, one of which was to become due June 10, 1922, and the other July 10, 1922, for money to be advanced by said S. L. Collins Oil Company to the Southern Oil Corporation, and for the purpose of securing these two notes the Southern Oil Corporation delivered to the said S. L. Collins Oil Company 25 8 per cent. convertible gold notes of the Kansas & Gulf Company of par value $1,000 each, Nos. MB–56 to MB–67, inclusive, and MB–43 to MB–55, inclusive.

"(18) That the said S. L. Collins Oil Company, after receiving the two notes for $10,000 each, as aforesaid, and the 25 convertible gold notes of the Kansas & Gulf Company to secure the payment of said notes, refused and declined to advance the Southern Oil Corporation the $20,000 cash which was to be the consideration for said notes and the collateral delivered to S. L. Collins Oil Company for the purpose of securing the payment thereof; and the master further finds in this connection that the said S. L. Collins Oil Company has never returned to the Southern Oil Corporation the said two described notes and the collateral deposited therewith as aforesaid.

"(19) That the Southern Oil Corporation demanded a return of said two notes and the collateral deposited therewith, as aforesaid, but the S. L. Collins Oil Company claims that it lost said two notes or got them burned in its office and therefore could not return same; and further claims that the Southern Oil Corporation, acting through its president, R. S. Ayers, in the early part of June, 1922, orally agreed over the telephone that the claimant, the S. L. Collins Oil Company, should hold the 25 8 per cent. convertible gold notes last above described as additional security for the balance due on the notes that were executed April 10 and April 11, 1922, hereinbefore described, and that the consideration for this additional collateral was that

the time of payment of said notes should be extended.

"(20) The master further finds that there was no letter or other writing confirming the purported telephone conversation and agreement, and that the testimony shows that the Southern Oil Corporation made repeated efforts to secure the return by the S. L. Collins Oil Company of the said 25 gold notes; some of the letters of the Southern Oil Corporation seeking a return of the 25 gold notes are as follows: ·

"On June 8, 1922, Charles R. Monfort, secretary-treasurer of Southern Oil Corporation, wrote S. L. Collins Oil Company as follows:

" 'I would ask that you kindly return to us at once the $25,000 of Kansas & Gulf Company convertible gold notes as I am called upon from time to time to account to Kansas & Gulf Company for this collateral. Would therefore ask that you kindly forward these notes upon receipt of this letter.'

"On June 13, 1922, Charles R. Monfort, secretary-treasurer of Southern Oil Corporation, wrote S. L. Collins Oil Company the following letter:

" 'Will you kindly return to us at once the $25,000 worth of 8 per cent. convertible gold notes of the Kansas & Gulf Company, sent you May 10th, as these were sent you with the express understanding that you would loan us $20,000 to help us through the month of May, and, inasmuch as you later decided that you could not do this, we ask that you kindly return these notes, together with our two promissory notes for $10,000 each.

" 'I am very anxious that you return these Kansas & Gulf Company notes promptly as we need them to carry out some of our plans.'

"On July 18, 1922, Charles R. Monfort, secretary-treasurer of Southern Oil Corporation, wrote S. L. Collins Oil Company in regard to said gold notes as follows:

" 'We have not yet received the bonds which you advised were in the safe and that you were unable to get to on account of a fire which occurred the latter part of last month. We believe you certainly have been able to get to this safe by this time, and would ask that you kindly send us the last $25,000 of Kansas & Gulf Company gold notes sent you, together with the two $10,000 notes for which you have given no consideration.'

"The master further finds in this connection that at no time subsequent to the time claimant alleges that said 25 gold notes were pledged to it in the early part of June, 1922,

did it make any contention in writing or otherwise when a return of these gold notes would be demanded, that they had been placed as additional security to the notes executed on the 10th and 11th of April, 1922.

"Therefore, the master finds that said $25,000 gold notes of the Kansas & Gulf Company last described as aforesaid were not · placed with S. L. Collins Oil Company as additional security, but that the said S. L. Collins Oil Company is now holding said notes without any consideration, and should be adjudged to return the same to the Southern Oil Corporation, together with all interest that it may have collected thereon."

[1] As these findings of the master were approved by the trial court, they should not be overthrown, on review here, unless there is obvious error therein. Warren v. Keep, 155 U. S. 265, 267, 15 S. Ct. 83, 39 L. Ed. 144. Both Collins and Ayers testified to a telephone conversation, occurring "early in June," to the effect that these gold notes were to be held as additional security for the two existing notes. The only other evidence of any such deposit, were vague statements by Woodward. When asked if the Southern had authorized such deposit he answered, "Not directly; no, sir." Which, followed by the question, "Indirectly?" was answered, "I assumed some arrangement had been made, but I did not know it." Also, when asked if the Southern "acquiesced" in such deposit, he said, "Well, that was a matter that was handled by Mr. Ayers and it is just a matter of assumption there again. I assume they acquiesced." Collins, Ayers and even Woodward were interested personally in having these gold notes regarded as additional security because Ayers and Woodward were indorsers on the notes made to Collins and owned by the Collins Company.

[2] The evidence to the contrary is that if such deposit had been made it should have appeared on the books of the Southern and that it did not; that the secretary-treasurer of the Southern had no knowledge, at the time or afterwards, of any such deposit although he was the person who conducted all of the correspondence concerning these gold notes and the loan (never made) sought to be secured in connection therewith and concerning the return thereof. Neither the evidence nor counsel suggest any reason why this official should not have been informed if the gold notes were deposited as additional collateral. The natural thing would be to so inform him. But the matter does not rest merely in silence. After sending the notes

and the gold notes, on May 11th, Monfort heard nothing concerning the promised loan thereon and again wrote Collins, on May 20th, urging an advance of $10,000 to be covered by one of the notes sent. On June 8th, he wrote Collins stating, "I would ask that you kindly return to us at once the $25,000 of Kansas & Gulf Company convertible notes as I am called upon from time to time to account to Kansas & Gulf Company for this collateral. Would therefore ask that you kindly forward these notes upon receipt of this letter." June 9th, Monfort wrote Collins a letter about other matters which states that there was a "phone conversation of last Saturday" between Monfort and Collins. June 13th, Monfort again wrote Collins, as follows:

"Will you kindly return to us at once the $25,000 worth of 8 per cent. convertible gold notes of the Kansas & Gulf Company, sent you May 10th, as these were sent you with the express understanding that you would loan us $20,000 to help us through the month of May, and, inasmuch as you later decided that you could not do this, we ask that you kindly return these notes together with our two promissory notes for $10,000 each.

"I am very anxious that you return these Kansas & Gulf notes promptly as we need them to carry out some of our plans."

June 14th, Collins wrote Monfort, acknowledged the letters of June 8th and 9th and wrote, somewhat at length, concerning the business relations and financial dealings between the two companies but made no mention regarding the notes or gold bonds which Monfort had requested be returned in his letter of June 8th. June 24th, Monfort wired Collins as follows:

"Regret to learn from long distance operator that you had fire last night. Have been endeavoring get you on phone regarding return of twenty-five thousand Kansas & Gulf notes. Please return today."

July 7th, Collins wrote Monfort:

"Dear Mr. Monfort: We have not as yet been able to remove the safe that was in the ruins and contains the papers that you have been writing us about.

"But we hope to get it out the first part of the week and then we will attend to the matter."

July 18th, Monfort wrote Collins:

"Dear Sir: We have not yet received the bonds which you advised were in the safe and that you were unable to get to on account of a fire which occurred the latter part of last month. We believe you certainly have been able to get to this safe by this time, and would ask that you kindly send us the last $25,000 of Kansas & Gulf gold notes sent you, together with two $10,000 notes for which you have given no consideration."

Thus, it appears that not only did neither Ayers nor Collins inform Monfort or any other officer of the Southern of this claimed deposit of these gold notes as additional security; not only was Collins silent for a month to Monfort's repeated demands for the return of the gold notes but, finally, when he did reply thereto, he made no such claim, although his letter was written sometime after he says such deposit had been agreed upon with Ayers, but, on the contrary, said or clearly intimated, that the difficulty of getting into his safe, where he claimed these papers were, was the only reason they had not been returned and that as soon as he could have access to them "we will attend to the matter." So far as this record reveals, the first time any such claim of pledge was made was when he presented, in the receivership, his claim of indebtedness. Such conduct amply justified the master in finding that no such deposit had ever been made.

The order should be and is affirmed.